# CHARLESTON.

STATE *v.* AMBROSE ABBOTT.

(No. 5783).

Submitted February 8, 1927.  Decided February 15, 1927.

CRIMINAL LAW—HOMICIDE—*On Clear Showing That Complaining Party Could Not Have Been Prejudiced, Erroneous Instruction is Not Cause for Reversal; One Convicted of Voluntary Manslaughter on Evidence Justifying Conviction for Higher Degree of Homicide Cannot Complain of Technical Deficiency in State's Instructions.*

An erroneous instruction is not cause for reversal where it clearly appears from the record that the party complaining could not have been prejudiced thereby.

(Criminal Law, 17 C. J. §§ 3688, 3705; Homicide, 30 C. J. § 711.)

(NOTE:  Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Roane County.

Ambrose Abbott was convicted of voluntary manslaughter, and he appeals.

*Affirmed.*

*Peter H. Camp* and *Grover F. Hedges* and *Thos. P. Ryan,* for appellant.

*Howard B. Lee,* Attorney General and *J. Luther Wolfe,* Assistant Attorney General, for the State.

LITZ, JUDGE:

Upon a trial for the murder of O. V. Ashley, the defendant, Ambrose Abbott, was convicted of voluntary manslaughter and sentenced to two years and eleven months in the State penitentiary.

Ashley, accompanied by his eleven year old son, while driving a two horse team came upon the defendant and five other men working along the public road in Roane county. He stopped and addressed them all; and upon being asked by one of the party if he was going to a fox chase that night, Ashley replied that he could not because the defendant's boys had seriously injured his dogs; whereupon the defendant said his sons had told him about attacking Ashley's dogs. A bitter argument between Ashley and Abbott ensued, in which Ashley called Abbott a vile name. As to what followed the word battle, the State and the defense present conflicting claims.

The evidence for the State shows that while Ashley was sitting on his wagon Abbott, advancing, struck him a violent blow on the arm with a five foot shovel. Ashley leaped to the ground, and after being struck on the leg by Abbot with the shovel, wrenched it from Abbott and struck at him several times, some of the blows taking effect. Abbott then ran, pursued by Ashley, a short distance to a mattock lying in the road, picked up the mattock, turned, and advancing eight or ten feet toward Ashley (who had stopped and ceased to threaten Abbott) struck him above the left ear with the mattock, knocking him down and crushing his skull. Without offering any assistance to Ashley, Abbott proceeded with his

work, saying, ''I am a man from Missouri. They will have to show me''. Whether the blow knocked Ashley unconscious does not appear, but he seems to have gotten back on the wagon and was taken to his home, several miles away. Later in the day he was brought unconscious to Doctor Thaxton, in Clendennin, who immediately sent him to a hospital in Charleston where he died early the next morning from the injury.

The defendant denies that he struck Ashley with the shovel or advanced before striking him with the mattock; and claims that Ashley, without cause, jumped off the wagon, twisted the shovel out of his hands, and proceeded to attack him with it; that after receiving several blows (which he admits did not hurt him very much) he turned and fled down the road, pursued at a distance of five or six feet by Ashley, with the shovel drawn and trying to hit him; and that he ''picked up the mattock and kind of struck back to the right and struck'' Ashley. Dr. Thaxton testified that he found on one of Ashley's arms a ''skinned place * * * scratched enough for the blood to ooze out, possibly for a distance of twelve or fifteen inches.''

None of defendant's witnesses support his claim that Ashley struck the first blow, and only one states that Abbot did not advance on Ashley before striking the fatal blow. It is true that another of his witnesses pretends that the defendant did not advance, but this witness later admitted having testified at the preliminary hearing that he didn't know whether Abbott walked back or not before striking with the mattock. We are convinced from an examination of the whole record that the defendant struck the first and the last blow, by advancing in each instance.

In addition to the common assignment that the verdict is not supported by the evidence, the defendant predicates error upon the giving of instructions for the State, the admission of evidence, and remarks of the presiding judge in the presence of some of the jury.

While some of the State's instructions may perhaps be technically deficient, when read in connection with the numerous favorable instructions for the defendant, in the light of the evidence and the jury's finding, we are satisfied that they

could not have prejudiced the rights of the defendant; and in our opinion this clearly appears from the record. The jury would have been justified in finding the defendant guilty of a higher degree of homicide.

Complaint is made that the young son of deceased, who witnessed the tragedy, was not of sufficient age and understanding to testify. This point is without merit as the evidence of the witness is not only intelligent, but convincing.

After the submission to the jury, and while they were retiring to consider their verdict, the trial judge, thinking that all of the jurymen had entered the jury room, remarked to some members of the bar present that "one of the objects of instructions seemed to be the reversal of cases". Although this remark, which seems to have been heard by some of the jurymen, might as well have been left unsaid, it certainly is not in our opinion reversible error.

The judgment of the circuit court is

*Affirmed.*